IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| IN RE JEFFERY R. AND <br> NANCY L. LIVINGSTON, <br><br> Debtors. | Bankruptcy Case No. 13-71744 <br> Adversary Proceeding No. 14-07044 |
| MARC BOUGIE, <br><br> Plaintiff - Appellee, <br><br> v. <br><br> JEFFERY R. LIVINGSTON, <br><br> Defendant -Appellant. | Case No. 1:15CV00036 <br><br> **OPINION** <br><br> By: James P. Jones <br> United States District Judge |

*Andrew S. Goldstein and Garren R. Laymon, Magee Goldstein Laskey & Sayers, P.C.,* Roanoke, Virginia, for Appellant; *David O. Williamson, Brumberg Mackey Wall P.L.C.,* Roanoke, Virginia, for Appellee.

In this bankruptcy appeal, I hold that the bankruptcy court applied the wrong test to determine whether a debt owed to a creditor is nondischargeable due to the debtor's listing of an incorrect address for the creditor on the schedule of debts. Because the debtor's reason for listing the wrong address is a question of fact, I will remand for further proceedings.

I.

The following undisputed facts are taken from the record of the adversary proceeding before the bankruptcy court. The creditor and appellee, Marc Bougie, made an unsecured loan to the debtor and appellant, Jeffery R. Livingston, in the amount of $100,000. The loan agreement provided that Bougie could demand repayment at any time and that the amount owed upon repayment would be $150,000. Bougie became dissatisfied with Livingston's business decisions and demanded repayment. When repayment was not made, Bougie filed suit in state court seeking damages for breach of contract as well as punitive damages.

While the state court action was pending, Livingston filed for Chapter 7 bankruptcy. He included the $150,000 debt to Bougie on the schedule of debts he filed with the bankruptcy clerk. Instead of Bougie's actual mailing address, however, Livingston listed the address of attorney George R. Brittan II, who had represented either Livingston or a company wholly owned by Livingston in the state court litigation. The record provided to this court does not contain any evidence as to why Livingston stated the wrong address for Bougie.

Because the schedule contained an incorrect mailing address for Bougie, he did not receive notice of the bankruptcy prior to the deadline for filing a proof of claim, otherwise known as the claims bar date. After the claims bar date had passed, Bougie's counsel in the state court case received communication from

2

Livingston's counsel indicating that Livingston would no longer respond to any discovery requests because Livingston had filed for bankruptcy. Bougie then initiated an adversary proceeding in the bankruptcy court by filing a Complaint seeking a declaration that the debt Livingston owed to Bougie was nondischargeable.

After the claims bar date but before the trustee had finished collecting assets, Livingston filed a proof of claim on Bougie's behalf. As of the date of oral argument before this court, the trustee still had not completed the collection of assets. Although this is not a no-asset case, the parties agree that there are insufficient assets to make any distributions to unsecured creditors.

Bougie's Complaint asserted several grounds for nondischargeability of the debt, only one of which is before this court. Both Bougie and Livingston moved for summary judgment. Livingston sought summary judgment on all counts of Bougie's complaint, but Bougie sought summary judgment only as to Counts III and IV, which pertained to the erroneous address and lack of notice. Count IV alleged that the debt was not dischargeable because it was not properly listed or scheduled in time to allow Bougie to file a timely proof of claim, and Bougie had no actual notice of the bankruptcy prior to the claims bar date. The bankruptcy court issued an oral ruling in favor of Bougie on Bougie's Motion for Summary Judgment with respect to Count IV of the Complaint, declared that Bougie had a

nondischargeable debt in the amount of $150,000, and entered a final, appealable judgment in that amount. The bankruptcy court took the remaining summary judgment motions under advisement.

Livingston appealed the bankruptcy court's ruling to this court. The issues have been fully briefed and orally argued. For the foregoing reasons, I will vacate the decision of the bankruptcy court and remand for further proceedings.

## II.

Pursuant to 28 U.S.C. § 158(a), I have jurisdiction over this appeal from the final judgment of the bankruptcy court. A bankruptcy court's conclusions of law are reviewed de novo. *Stancill v. Harford Sands Inc. (In re Harford Sands, Inc.)*, 372 F.3d 637, 639 (4th Cir. 2004).

### A.

Section 523(a) of the Bankruptcy Code provides, in relevant part:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt --
>
> . . . .
>
> > (3) neither listed nor scheduled under section 521(a)(1) of this title, with name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit --
> >
> > > (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing. . . .

4

11 U.S.C. § 523(a). Rule 1007(a) of the Federal Rules of Bankruptcy Procedure states that a debtor must file with his petition a list containing both the names and addresses of his creditors. Fed. R. Bankr. P. 1007(a). Section 523(a) thus appears to create a general rule that a debt is not dischargeable in bankruptcy if the debtor failed to list the creditor, with his correct address, in time to permit the creditor to timely file a proof of claim.

Livingston argues that § 523(a) is not as clear as it seems. Livingston urges the court to use its equitable powers and consider his reasons for failing to list Bougie's correct address, the extent to which fixing the problem now would disrupt the bankruptcy proceedings, and whether correcting the error would prejudice Bougie or other creditors. According to Livingston, "timely" does not necessarily mean by the claims bar date, but rather means in time for the creditor to protect his right to share in any distribution. Bougie, on the other hand, argues that § 523(a) is unambiguous and should be given its plain meaning. Each of the parties' competing interpretations of the statute is supported by case law from outside the Fourth Circuit, but there is no controlling precedent governing the issue presented.

The bankruptcy court made the following oral ruling:

> The court finds as a matter of law the debtor must exercise reasonable diligence in accurately scheduling his debts and that includes the address where notice should be given. The question is not whether the debtor was careless or fraudulent or willful in

5

> scheduling an inaccurate address; it's the fact of notice, not the intent, which is controlling here. Here, the un-rebutted affidavits of the creditor and Mr. Tomlin reflect that the scheduled address of the creditor was not and has never been P.O. Box 718, Tazewell, Virginia. Notice to Mr. Bougie at this address is in fact no notice at all to Mr. Bougie.
>
> Further, this is an asset case and the deadline for Mr. Bougie to file a proof of claim expired before he had notice or actual knowledge of the bankruptcy. These facts establish the requirements of non-dischargeability under 11 USC Section 523(a)(3)(A) and partial summary judgment as to non-dischargeability in the amount of 150 thousand dollars at this time is appropriate.

(Tr. of Proceedings 3-4, ECF No. 2 at 164-65.) In other words, the bankruptcy court adopted Bougie's interpretation of § 523(a), concluding that a debt is nondischargeable where the debtor failed to list the creditor, with a correct address, prior to the claims bar date, regardless of the reason for the omission or its effect on the proceedings, the omitted creditor, or other creditors.

At least one court of appeals decision and a number of bankruptcy court decisions support the bankruptcy court's ruling, interpreting § 523(a) in the strictly mechanical way that Bougie urges. *See, e.g.*, *Colonial Sur. Co. v. Weizman*, 564 F.3d 526 (1st Cir. 2009); *Schlueter v. State Farm Mut. Ins. Co. (In re Schlueter)*, 391 B.R. 112 (B.A.P. 10th Cir. 2008); *Croix Oil Co. v. Mai Yer Moua (In re Mai Yer Moua)*, 457 B.R. 755 (Bankr. D. Minn. 2011); *Wakilpoor v. Faruque (In re Faruque)*, Bankr. No. 07-13375-SSM, 2009 WL 3854941 (Bankr. E.D. Va. Nov. 17, 2009). The problem with this interpretation, however, is that it mirrors the

Supreme Court's holding in *Birkett v. Columbia Bank*, 195 U.S. 345 (1904), which Congress intended to legislatively overrule when it passed the 1978 Bankruptcy Reform Act. *Stone v. Caplan (In re Stone)*, 10 F.3d 285, 290 (5th Cir. 1994); Lauren A. Helbling and Hon. Christopher M. Klein, *The Emerging Harmless Innocent Omission Defense to Nondischargeability Under Bankruptcy Code § 523(a)(3)(A): Making Sense of the Confusion Over Reopening Cases and Amending Schedules to Add Omitted Debts*, 69 Am. Bankr. L.J. 33, 55-56 (1995).

In *Birkett*, the debt at issue had not been scheduled prior to discharge, and the creditor had not received notice or actual knowledge of the bankruptcy prior to discharge. 195 U.S. at 349. The relevant portion of the bankruptcy law then in place stated:

> A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such . . . have not been duly scheduled in time for proof and allowance, with the name of the creditor, if known to the bankrupt, unless such creditor had notice or actual knowledge of the proceedings in bankruptcy. . . .

*Id.* (citation omitted). Indicating that the quoted statute was "for the benefit of creditors, not of the debtor," the Court held that the unscheduled debt had not been discharged. *Id.* at 350. The Court did not discuss the debtor's reasons for failing to schedule the debt or conduct any equitable analysis.

Sixty years after *Birkett* was decided, the Fifth Circuit took a different approach to deciding whether an unscheduled debt had been discharged. In

7

*Robinson v. Mann*, 339 F.2d 547, 549-50 (5th Cir. 1964), the court invoked its equitable powers and allowed the debtor to amend the schedule to list the omitted debt after the claims bar date.  The court noted that a debtor in this situation should not be permitted to correct his mistake as a matter of course; rather, the bankruptcy court should consider the reasons for the failure to list the debt, "the degree of disruption which would result from allowing the amendment, and whether any creditor including the unlisted creditor would be prejudiced thereby."  *Id.* at 550.

Faced with these two competing cases and their progeny, Congress enacted the Bankruptcy Reform Act of 1978, which contains § 523(a)(3)(A), the statutory provision at issue in the instant case.

> A key difference between [the failure to list provision in the prior law and § 523(a)(3)(A)] was that under the [former] Bankruptcy Act the omitted debt was discharged if the "creditor had notice or actual knowledge of the proceedings in bankruptcy" while the similar proviso in the new Code made the omitted debt dischargeable if the "creditor had notice or actual knowledge of the case *in time for such timely filing* [of a proof of claim]."

Helbling and Klein, *supra*, at 56.  Though the significance of this change is not immediately apparent, the legislative history reveals that Congress had come to regard the *Birkett* decision as producing unduly harsh results for debtors who innocently failed to schedule all of their debts.  The House and Senate Reports discussing the new statutory language state that it "follows current law, but clarifies some uncertainties generated by the case law construing 17A(3).  The debt

8

is excepted from discharge if it was not scheduled in time to permit timely action by the creditor to protect his rights, unless the creditor had notice or actual knowledge of the case." H.R. Rep. No. 95-595 at 364 (1977); S. Rep. No. 95-989 at 78-79 (1978). A clearer pronouncement of the legislative intent appears in the final floor statements made by Representative Edwards and Senator DeConcini immediately prior to enactment of the new law: "'The provision is intended to overrule *Birkett v. Columbia Bank*, 195 U.S. 345 (1904).'" 124 Cong. Rec. 33,998 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 6505, 6522 (statement of Sen. DeConcini); 124 Cong. Rec. 32,392 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 6436, 6453 (statement of Rep. Edwards).

The Fifth Circuit reviewed this legislative history in *Stone* and concluded that when the legislature had enacted § 523(a), it had essentially affirmed the equitable three-part test that had been articulated by the *Robinson* court. *Stone*, 10 F.3d at 290. According to *Stone*, to determine "whether a debtor's failure to list a creditor will prevent discharge of the unscheduled debt," a court should consider "1) the reasons the debtor failed to list the creditor, 2) the amount of disruption which would likely occur, and 3) any prejudice suffered by the listed creditors and the unlisted creditor in question." *Id.* The *Stone* court applied these factors to the case before it and held that "[b]ecause the Stones' failure to list the Caplans as creditors was solely due to mistake or inadvertence and because the Caplans were

9

scheduled in time to protect their rights, section 523(a)(3)(A) is inapplicable here." *Id.* at 292. Although *Stone* was a no-asset case, its three-part test applies to asset cases as well. *See Omni Mfg, Inc. v. Smith (In re Smith)*, 21 F.3d 660, 664, (5th Cir. 1994).

The Fifth Circuit is not the only court of appeals that has adopted an equitable test for determining whether a debt is nondischargeable due to the debtor's failure to properly schedule it. The Seventh Circuit applied a similar analysis in *Stark v. St. Mary's Hospital (In re Stark)*, 717 F.2d 322, 324 (7th Cir. 1983), though the holding in *Stark* was stated in a way that might limit its application solely to no-asset cases. In *Rosinski v. Boyd (In re Rosinski)*, 759 F.2d 539, 541 (6th Cir. 1985), also a no-asset case, the Sixth Circuit, citing *Stark*, concluded that "harm to the creditor rather than notice is the key issue here," along with "whether there was evidence that the exclusion was fraudulent or intentional." Notably, the *Rosinski* court indicated that "only the creditors' rights to participate in a dividend and to obtain a determination of dischargeability are of such importance that their los[s] mandates exception of a late scheduled debt from discharge." *Id.* at 542. And in *Samuel v. Baitcher (In re Baitcher)*, 781 F.2d 1529, 1534 (11th Cir. 1986), another no-asset case, the Eleventh Circuit concluded that if a debtor could show absence of fraud and prejudice, she should have her debt discharged.

10

Following *Rosinski*, the Sixth Circuit in *Soult v. Maddox (In re Soult)*, 894 F.2d 815 (6th Cir. 1990), applied an equitable test in a case where, unlike most no-asset cases, a claims bar date had been set and had passed before the creditor learned of the bankruptcy. Importantly, the court found that *Rosinski* "did not turn on the absence of a bar date." *Id.* at 817. The *Soult* court noted that the omission of the debtor from the schedule was an inadvertent mistake and reasoned that the creditor "ha[d] not lost any meaningful right that he would have enjoyed if he had been properly listed in the first place." *Id.* Therefore, the court affirmed the bankruptcy court's decision to reopen the closed bankruptcy case to allow listing of the omitted creditor.

Although the Fourth Circuit has not spoken on the issue of whether to discharge an innocently omitted debt, our court of appeals has said the following about statutory interpretation:

> When conducting statutory analysis, we must first determine whether the meaning of the statute is ascertainable through the text alone. The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole. This includes employing various grammatical and structural canons of statutory interpretation which are helpful in guiding our reading of the text.

*Healthkeepers, Inc. v. Richmond Ambulance Auth.*, 642 F.3d 466, 471 (4th Cir. 2011) (internal quotation marks and citations omitted). Unless Congress has indicated otherwise, the Fourth Circuit gives "statutory terms their ordinary,

11

contemporary, common meaning." *Othi v. Holder*, 734 F.3d 259, 265 (4th Cir. 2013) (internal quotation marks and citation omitted). However, the Fourth Circuit has recognized an exception to the plain meaning rule that can be applied "when literal application of the statutory language at issue produces an outcome that is demonstrably at odds with clearly expressed congressional intent." *Sigmon Coal Co. v. Apfel*, 226 F.3d 291, 304 (4th Cir. 2000) (internal quotation marks and citation omitted).

I find that this is one of those rare instances in which a mechanical application of § 523(a)(3)(A) produces a result that is contrary to the unequivocally expressed intent of the legislature. Congress meant to overrule *Birkett*, and a strictly literal reading of § 523(a)(3)(A) leads to the same inflexible, creditor-focused analysis applied in *Birkett*. The equitable approach employed by the Fifth, Sixth, Seventh, and Eleventh Circuits achieves Congress's purpose and appropriately balances the interests of the debtor and creditors. On remand, the bankruptcy court should apply the three-part test articulated in *Stone*, considering "1) the reasons the debtor failed to list the creditor, 2) the amount of disruption which would likely occur, and 3) any prejudice suffered by the listed creditors and the unlisted creditor in question." *Stone*, 10 F.3d at 290.

B.

Aside from the equitable analysis, Livingston also advances a different argument, invoking 11 U.S.C. § 726(a)(2)(C) and interpreting "timely" as used in § 523(a) to mean in time to participate in distribution of the estate, rather than by the claims bar date. That was the approach taken by the bankruptcy court in *Lott Furniture, Inc. v. Ricks (In re Ricks)*, 253 B.R. 734, 745-46 (Bankr. M.D. La. 2000), and adopted by the Sixth Circuit in an unreported decision in *Kowalski v. Romano (In re Romano)*, 59 F. App'x 709, 713-14 (6th Cir. 2003) (unpublished).

Section 726, which governs distribution of the estate in a Chapter 7 bankruptcy case, provides that an allowed unsecured claim that is "tardily filed" by the creditor has the same priority as an allowed unsecured claim that is "timely filed under § 501," as long as the creditor did not have notice or actual knowledge of the bankruptcy "in time for timely filing of a proof of such claim under section 501(a) of this title" and the proof of claim is filed "in time to permit payment of such claim." 11 U.S.C. § 726(a)(2)(C). Bougie concedes that § 726(a)(2)(C) allows a creditor who did not receive notice by the claims bar date "to file a proof of claim and receive distributions, in contravention of Rule 3002(c)." (Br. of Appellee Marc Bougie in Opp'n to Br. of Appellant Jeffery P. Livingston 14, ECF No. 6.) Although Bougie has not yet filed a proof of claim, he could still do so,

13

and his claim would have the same priority as though he had timely filed a proof of claim. [1]

Section 726(a)(2)(C) uses the phrase "timely filed" and the phrase "tardily filed," and it is clear that those phrases mean two different things. A tardily filed proof of claim is placed on the same playing field as a timely filed proof of claim only if the creditor did not know about the bankruptcy "in time for timely filing of a proof of such claim under section 501(a)." While a "tardily filed" claim under § 726(a)(2)(C) is treated like a timely filed proof of claim, it is not actually timely filed.

The phrase "timely filed" is defined in the rules. Rule 3002(c) states that "a proof of claim is timely filed if it is filed not later than 90 days after the first date set for the meeting of creditors called under § 341(a) of the Code." Fed. R. Bankr. P. 3002(c). "Timely filed" is thus defined by reference to the claims bar date.

---

[1] Section 501(a) permits a creditor to file a proof of claim. Section 501(c) states, "If a creditor does not timely file a proof of such creditor's claim, the debtor or the trustee may file a proof of such claim." 11 U.S.C. § 501(c). Section 726(a)(2)(c) addresses only tardily filed proofs of claims filed by the creditor under § 501(a), not tardily filed proofs of claims filed by the debtor on behalf of the creditor under § 501(c). Therefore, the proof of claim filed by Livingston on behalf of Bougie, which was filed long after the claims bar date, cannot be considered a "tardily filed" claim for purposes of § 726(a)(2)(C) that would be given equal priority with timely filed proofs of claim. *See* Fed. R. Bankr. P. 3004 ("If a creditor does not timely file a proof of claim under Rule 3002(c) or 3003(c), the debtor or trustee may file a proof of the claim within 30 days after the expiration of the time for filing claims prescribed by Rule 3002(c) or 3003(c), whichever is applicable."). However, Bougie still has the opportunity to file his own proof of claim, which would be given the same priority as proofs of unsecured claims that were timely filed.

14

Interpreting "timely filed" as used in § 523(a)(3)(A) to include tardily filed proofs of claim under § 726(a)(2)(C) is a strained interpretation of the statutory text.

In my view, the better approach is to consider § 726(a)(2)(C) as part of the prejudice analysis that comprises the third prong of the *Stone* test. If an innocently omitted creditor learns of the bankruptcy prior to distribution, when he is still able to file a proof of claim and ensure that his claim will be given the same priority as if it had been timely filed, then the omitted creditor likely has not suffered any prejudice due to the earlier omission or mistake. Where, as in this case, the outcome for the omitted creditor and the other creditors would be the same regardless of whether the omitted creditor had received notice before or after the claims bar date, the third prong of the *Stone* test weighs in favor of finding the debt dischargeable.

Contrary to Bougie's contention, a creditor in this situation should not be permitted to take advantage of an innocent mistake and allowed to choose whether he would prefer to participate in the distribution or have his claim declared nondischargeable. That outcome would give too much power to the omitted debtor and would not serve the Bankruptcy Code's purpose of giving the "honest but unfortunate debtor" a fresh start. *Nunnery v. Rountree (In re Rountree)*, 478 F.3d 215, 220 (4th Cir. 2007) (quoting *Local Loan v. Hunt*, 292 U.S. 234, 244 (1934)).

III.

For the foregoing reasons, the judgment of the bankruptcy court will be vacated and the case remanded for further proceedings in accordance with this Opinion. A separate judgment will be entered herewith.

DATED: January 4, 2016

/s/ James P. Jones
United States District Judge